UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIE NELSON AND SARAH KEAN, )
                               )
      Plaintiffs,              )
                               )
      v.                       )      Case No.:    2:19-cv-272-FtM-99MRM
                               )
PETRO GATE, INC. and           )
BEHNAM BAGHERI,                )
                               )
      Defendants.              )
_____)

## AMENDED JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

The Parties (Jennie Nelson, Sarah Kean, Petro Gate, Inc. and Behnam Bagheri), by counsel, jointly move for the Court's review and approval of their written Settlement Agreement and Release (attached hereto as Exhibit A).  The Complaint in this matter contains claims arising under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages on behalf both of the Plaintiffs, and for unpaid minimum wages on behalf of Plaintiff Sarah Kean ("Kean").  The settlement represents full relief for Plaintiff Jennie Nelson ("Nelson"), and full relief for Plaintiff Sarah Kean on her overtime claim. The only issue upon which a compromise was reached was upon Kean's minimum wage claim, which arises out of a dispute on the number of hours worked by Kean during her final pay period.  The parties jointly request that the Court: 1) approve the terms of the settlement they have agreed upon following arms-length negotiations; 2) dismiss the case with prejudice and direct entry of final judgment; and 3) grant such further relief as the Court deems just.

**FACTUAL BACKGROUND**

1.     This action arises under the FLSA.  In *Lynn's Foods Stores, Inc. v. U.S. Department of Labor*, the Court held, "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." 679 F.2d 1352 (11th Cir. 1982).  "First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them." *Id*., at 1353. Alternatively, under section 216(b), when an employee brings "a private action for back wages . . . and present[s] to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id*. Under this authority, before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id*. at 1355. If the settlement reflects "a reasonable compromise over issues … that are actually in dispute," the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

2.     In their Complaint, Plaintiffs alleged that Petro Gate, Inc. and Behnam Bageri (collectively "Defendants") failed to compensate Plaintiffs at a rate of one and one-half times their regular rate of pay for all of the hours that they worked in excess of forty (40) each week.  Instead, Plaintiffs alleged that Defendants compensated them at their regular rate of pay for all of their hours worked—even the hours that they worked over forty (40) each week.

3.     Additionally, Plaintiff Kean alleged that she was not compensated for all hours worked in her final pay period, December 17, 2018 through December 30, 2018.

2

Kean alleges that Defendant's failure to pay her final paycheck resulted in a violation of the minimum wage provisions of the FLSA.

4.    Shortly after the Complaint was filed, counsel for the Parties began to explore settlement.  The undersigned counsel spoke by telephone and communicated via e-mail numerous times regarding potential settlement from May through July 2019. During this time, and although formal discovery was not served by the parties in this case, Petro Gate, Inc. voluntarily provided Plaintiffs with access to their time records, and all checks representing payment to them for work performed at Petro Gate.

5.    Thereafter, Plaintiffs were able to calculate exactly how much unpaid overtime they alleged they were owed, including liquidated damages.

6.    With regard to Kean's minimum wage claim, Kean estimated that she was owed approximately $483.00 for work she performed during her final pay period. However, Defendants allege that Kean was terminated during the previous pay period for closing the store early without obtaining permission to do so, and that she performed no work during the time period that she alleges that she was not paid. Defendants alleged that Kean's final paycheck was paid to her on December 16, 2018 and represents all paychecks that are owed to Kean.

7.    There is a *bona fide* dispute in this matter.  The Plaintiffs alleged that they were paid through a payroll company for all work performed up to forty (40) hours per week, and they were provided a separate check compensating them at a straight time rate for all hours over forty (40) in certain work weeks.  Petro Gate disputes that the additional compensation paid to Plaintiffs was pay for hours worked at a straight time rate and has evidence that Plaintiffs may not have worked all hours for which they are

claiming overtime pay. Additionally, this matter involves a bona fide dispute regarding whether and to what extent Ms. Kean is entitled to payment for hours that she alleges that she worked in her final pay period for which she was never paid. Specifically, Defendants allege that Ms. Kean was terminated prior to the time that she alleges that she was not paid, and that the reason for her termination was her decision to close the store earlier than its scheduled closing time, which would result in fewer hours worked. Defendants allege that Kean's final week of work was the week ending December 16, 2019, and that she did not perform any work beyond that date. Defendants have no time records that demonstrate that Kean performed work after December 16, 2019. Ms. Kean alleges that Defendants' Manager—Anthony (last name unknown)—knew she was working after December 16, 2018. However, Defendants denied that Anthony had such knowledge and argue that even assuming arguendo that Ms. Kean performed work after the date that she was terminated, it was without Defendants', or Defendants' management's knowledge. Thus, continued litigation presents risk to both parties.

8.      The complexity, expense, and length of future litigation also militate in favor of this settlement. Plaintiffs and Petro Gate continue to disagree over the merits of the claims asserted by Plaintiffs. If the parties continue to litigate this matter, they would be forced to engage in additional costly discovery—specifically with regard to Kean's minimum wage claim—motion practice, and possibly a trial in order to prove their claims and defenses. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

9.      The parties, who are represented by counsel experienced in employment litigation, recognize the benefit of a settlement rather than protracted litigation.

4

10.     The Settlement Agreement contains a payment of a total of $4,079.79 to Ms. Nelson, with $2,039.89 being allocated to compensate her for alleged back wages, and an additional amount of $2,039.89 to compensate her for alleged liquidated damages, which represents full relief to Ms. Nelson on her overtime claim. The Settlement Agreement also contains a payment to Ms. Kean in the total amount of $1,357.60, with $803.80 to compensate her for alleged back wages, and an additional amount of $553.80 to compensate her for alleged liquidated damages. The amount paid to Ms. Kean includes an additional payment of $250.00 in back wages to compensate her for the hours worked that she claims she was never received in her final paycheck and to satisfy her minimum wage claim.

11.     In addition to the payment to Plaintiffs outlined above, the Defendants will also pay $3,500 to Plaintiffs' counsel to compensate for attorneys' fees and costs. The undersigned counsel aver that the amount of attorneys' fees was negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs. The amount of attorneys' fees set forth in the Settlement Agreement will fully satisfy Plaintiffs' attorneys' fees obligations.

12.     The Settlement Agreement was negotiated by experienced counsel at arm's length over the course of several months and after exchanging the relevant pay and time records. The parties agree that it fairly and adequately resolves the claims in this matter. The parties further agree that there was no undue influence, overreaching, collusion or intimidation in connection with the settlement.

13.     Under the Settlement, Plaintiffs are receiving all overtime wages owed to them, plus an equal amount as liquidated damages, and Plaintiff Kean is receiving a

reasonable compromise of her minimum wage claim given the dispute with regard to her claim.

14.     The Parties previously submitted their Joint Motion for Approval of Settlement Agreement with a true and correct copy of the Parties' Settlement Agreement on August 14, 2019.

15.     On August 19, 2019, this Honorable Court entered an order denying the Parties' Motion without prejudice based on the fact that there is an "unexplained reduction in the amount of liquidated damages to be paid to Plaintiff Kean for her unpaid minimum wage claim." *See* D.E. 23 at 7.

16.     The Court directed the Parties to file an amended joint motion to approve that adequately addresses this lone deficiency.  Therefore, by their instant Motion, the Parties address, in further detail, the reasons why Plaintiff Kean is receiving less than full liquidated damages on her minimum wage claim.

<u>**MEMORANDUM OF LAW**</u>

Pursuant to the law of this Circuit, judicial review and approval of this tentative settlement provides final and binding effect to an agreement to settle a compromise of a claim under the FLSA. *Lynn Food Stores, Inc. v. U.S. Dep't of Labor,* 679 F. 2d 1350 (11th Cir. 1982).  As the Eleventh Circuit held in *Lynn Food Stores,*

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.  First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . The only other route for compromise of FLSA claims is provided in the context suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations.  When employees

6

bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. *Id.* at 1352-53.

Before approving an FLSA settlement, the court must ensure that it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55.   If the settlement reflects a reasonable compromise over issues that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.   In determining whether the parties' Agreement is fair and reasonable, the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible discovery; and (6) the opinions of counsel. *See Leverso v. South Trust Bank of Ala., Nat. Assoc.,* 18 F. 3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.,* No. 6:05-cv-592-0rl-22JGG, 2007 U.S. Dist. LEXIS 10287, at *2-3 (M.D. Fla. Jan. 8, 2007).   The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton,* 2007 U.S. Dist. LEXIS at *2-3; *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).

Here, the settlement reached between the Parties with regard to the Plaintiffs' overtime claims represents full payment for all overtime wages owed and full liquidated damages.   Therefore, Plaintiffs are receiving full recovery under the law with regard to the overtime claims.   Furthermore, the parties jointly submit that the $250.00 that Kean is receiving in order to satisfy her minimum wage claim is a reasonable compromise of issues that are actually in dispute.   Specifically, and

7

as more further set forth above, while Kean alleges that she is owed monies for performing work until approximately December 30, 2018, Defendants allege that Ms. Kean was terminated during the previous pay period and was fully compensated for all of her hours worked.  Defendants have no time records that demonstrate that Kean performed work after December 16, 2018.  Ms. Kean alleges that Defendants' Manager—Anthony (last name unknown)—knew she was working after December 16, 2018.  However, Defendants denied that Anthony had such knowledge and argue that even assuming arguendo that Ms. Kean performed work after the date that she was terminated, it was without Defendants', or Defendants' management's knowledge.  As a result of these hotly disputed facts, the Parties reached a reasonable compromise that is more than half of what Plaintiff alleges that she is owed less liquidated damages based on the lack of evidence on both sides, and the expense and uncertainty of protracted litigation.

There has been sufficient investigation and exchange of information to allow counsel for Plaintiffs and Defendants to evaluate the parties' claims and defenses and make recommendations to each party in agreeing upon the resolution of Plaintiffs' claims as set forth in their Agreement.  After exchanging information and records from Plaintiffs' employment and engaging in settlement negotiations which lasted over the course of numerous months, and in order to avoid the uncertainties of and costs of dispositive motions and trial, a compromise has been agreed upon with Plaintiffs receiving a recovery acceptable to them in light of the potential issues arising from the issue of proving the number of hours they worked. The Plaintiffs have been advised that if they proceed in this matter, they may prove all of the damages to which they claim entitlement, and also receive an

equal amount in liquidated damages, or a jury may choose to credit the employer's position, and they may receive a lesser, or no, recovery. In light of this uncertainty, as well as the possibility of protracted litigation, Plaintiffs have agreed that the sum they are receiving in this settlement constitutes a reasonable an informed compromise of their claims.

Accordingly, the parties stipulate that this Agreement is fair and reasonable, particularly where, as here, attorneys' fees and costs are not a percentage of Plaintiffs' recovery in this case, such that there is no correlation between the amount of monetary consideration being paid to Plaintiffs and the amount of attorneys' fees and costs being paid by Defendants on the Plaintiffs' behalf. *See* 29 U.S.C. §216(b); *Kreager v. Solomon* & *Flanagan,* P.A., 775 F. 2d 1541, 1542 (11th Cir. 1985). Rather, the Plaintiff s' attorneys' fees and costs were claimed by Plaintiffs and their counsel separate and apart from the amounts sought by Plaintiffs for their underlying claims and were negotiated independently. *See Bonetti v. Embarq Mgmt.* Co., No. 6:07-cv-1335-Orl-31GKJ, 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009)

The compromise agreed upon by the parties resolves all of Plaintiffs' claims for attorneys' fees and Plaintiffs have no responsibility to their counsel for any out of pocket sums. Importantly, throughout the entirety of the litigation in this case, Plaintiffs was represented by competent counsel with experience in labor and employment law and Defendants were also represented by experienced counsel. The parties further advise the Court that their settlement herein includes every term and condition of the parties' settlement.

9

WHEREFORE, the parties jointly request that the Court approve the Settlement Agreement and Release.  Pursuant to the Parties' agreement, they will submit a separate stipulation of dismissal following the receipt of the final payment in this matter. Respectfully submitted on August 25, 2019,


s/ Chanelle J. Ventura
Chanelle J. Ventura, Esq.
Trial Counsel
Florida Bar No. 1002876
E-Mail: CVentura@ForThePeople.com
Morgan & Morgan., P.A.
600 N. Pine Island Road, Suite 400
Plantation, FL
Telephone: (954) 318-0268
Facsimile: (954) 333-3515

Counsel for Plaintiffs

s/ Amy L. Garrard
Amy L. Garrard, Esq.
Trial Counsel
Florida Bar No. 0908711
E-Mail: agarrard@agemploymentlaw.com
AG EMPLOYMENT LAW, PLLC
1000 Tamiami Trail N., Suite 301
Naples, FL  34102
Telephone:  (239) 241-7730
Facsimile:  (239) 241-7729

Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the Court's CM/ECF system to Attorney Amy Garrard, Esq., AG Employment Law, PLLC, 1000 Tamiami Trail, North, Suite 301, Naples, Florida 34102 at agarrard@agemploymentlaw.com, on this 25th day of August, 2019.


*s/ Chanelle J. Ventura*